**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

JULIAN GARRETT,
ADC #153237                                                                                    PLAINTIFF

4:20CV00484-JM-JTK

WALTER WASHINGTON, et al.                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr.   Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.        The detail of any testimony desired to be introduced at the hearing before the

1

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.    Introduction

Plaintiff Julian Garrett is a state inmate incarcerated at the Varner Super Max Unit of the Arkansas Division of Correction (ADC).   He filed this action pursuant to 42 U.S.C. § 1983, alleging constitutional claims of excessive force and failure to protect and state law claims of negligence and assault and battery against several Defendants. (Doc. No. 2)   Plaintiff's allegations against Defendants Smith and Taylor were dismissed on May 19, 2020. (Doc. No. 7)

This matter is before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts, filed by remaining Defendants Washington, Jones, and Brown. (Doc. Nos. 52-54, 58). Plaintiff filed a Response (Doc. No. 60), and Defendants filed a Reply (Doc. Nos. 62, 66).

### II.    Facts

Plaintiff alleged that on September 17, 2019, Defendants Washington, Jones and Brown responded to his isolation cell after he refused to accept a cellmate. (Doc. No. 2, p. 8) Washington threatened to spray him with mace, cuffed him, and extracted him from his cell. (Id.) The three

officers then escorted Plaintiff down the hallway toward behavior control, and when they reached the control booth, Washington aggressively said to Plaintiff, "this what you get for writing up my fellow officers, 'Bitch.'" (Id., pp. 8-9) Washington then grabbed the back of Plaintiff's neck and smashed his head into the bars of the control booth multiple times, leaving Plaintiff with a knot on his head and a busted mouth. (Id., p. 9) Defendants Brown and Jones failed to intervene to prevent the force, and denied him medical care following the incident. (Id.) Plaintiff later received medical care for injuries to his neck, back, head, and wrist. (Id.)

III.    **Summary Judgment Motion**

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

A.    **Defendants' Motion**

The Court initially finds that Plaintiff's monetary claims against Defendants in their

official capacities should be dismissed, pursuant to sovereign immunity. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65-66 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).

Defendants next ask the Court to dismiss Plaintiff's claims against them in their individual capacities, based on qualified immunity, which protects officials who act in an objectively reasonable manner.   It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   Qualified immunity is a question of law, not a question of fact.   McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).   Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.   Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1]   Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

affirmative. <u>Nelson v. Correctional Medical Services</u>, 583 F.3d 522, 528 (8th Cir. 2009).

In support of their Motion, Defendants provide Declarations, incident reports, excerpts from Plaintiff's deposition, and other exhibits.   Defendant Washington stated in his Declaration that he and Defendant Brown were called to Plaintiff's cell about 4:10 p.m. on September 17, 2019, in response to a call that Plaintiff refused to accept a cellmate. (Doc. No. 52-2, p. 1) Washington told Plaintiff that if he did not comply, he would be placed on behavior control, and when Plaintiff refused, Washington, Jones and Brown escorted him to the shower. (<u>Id</u>., p. 2) Washington denied that he threatened to spray Plaintiff at that time. (<u>Id</u>.) When they arrived at the shower, Plaintiff refused to enter and said he wanted to be taken to the dayroom. (<u>Id</u>.) When Washington told him he was going to the shower, Plaintiff snatched away from Washington, and tried to spit in his face. (<u>Id</u>.) Washington then attempted to regain control of Plaintiff by placing him against the control booth bars. (<u>Id</u>.) When Plaintiff did not immediately comply with Washington's direct order to stop, Washington, Brown and Jones managed to place him in the shower and uncuffed him. (<u>Id</u>.)Washington did not try to use the taser on Plaintiff, as he did not have it with him. (<u>Id</u>.) Washington denied that Plaintiff hit his head or had any bruises after the incident, and notified the infirmary after the incident. (<u>Id</u>., p. 3) The nurse later told him Plaintiff had a knot on his head. (<u>Id</u>.) Washington stated he only used force necessary to regain control of Plaintiff and denied he was aggressive or that he told Plaintiff, "this is what you get…." (<u>Id</u>.) After the incident he completed a report (Doc. No. 52-5, pp. 1-2) and filed disciplinary charges against Plaintiff. (Doc. No. 52-2, p. 3; Doc. No. 52-11)

Defendant Brown stated he went to Plaintiff's cell with Washington and that Washington told Plaintiff that if he did not accept a cellmate he would be placed on behavior control. (Doc. No. 52-3, pp. 1-2) Plaintiff refused, so they removed Plaintiff and his property from the cell and

escorted him to the shower, with Jones on one side and Washington on the other. (Id., p. 2) When Plaintiff refused to go into the shower and said to put him in the dayroom, Washington told him he was going into the shower. (Id. ) Plaintiff then snatched away from Washington and tried to spit on him, and Washington attempted to regain control over him by placing him against the control booth bars and directly ordering him to stop. (Id.) Brown, Washington, and Jones placed Plaintiff in the shower, and the unit's medical staff was notified. (Id.) A nurse arrived about 6:17 p.m. and Brown took a photograph of Plaintiff and completed an incident report. (Id., pp. 2-3) Brown stated that Washington did not become aggressive with Plaintiff or grab him by the neck or slam his head into the control booth. (Id., p. 3) Washington also did not make the statement to Plaintiff, "This is what you get…," and used only the force that was necessary to regain control over Plaintiff. (Id.) Brown speculated that Plaintiff might have hit his head when he continued to resist Washington's efforts to control him, and Brown did not remember that Plaintiff busted his lip during the incident. (Id.) Brown filed an incident report. (Doc. No. 52-6)

Defendant Jones stated he assisted Washington and Brown with escorting Plaintiff to the shower on September 17, 2019. (Doc. No. 52-4) His account of the incident is the same as Brown's, and he denied that Washington used more force than necessary or that he stated, "This is what you get…." (Id., p. 2) Jones also did not remember that Plaintiff hit his head or bit his lip. (Id.) He also filed an incident report. (Doc. No. 52-7)

Raymond Naylor is the Internal Affairs/Disciplinary Hearing Administrator for the ADC and reviewed the incident at issue at the request of the Varner Super Max Unit Warden. (Doc. No. 52-6) The ADC policies on the use of force (Administrative Regulation 409 and Administrative Directive 17-06) authorize the use of force only to the extent necessary to maintain order and discipline, and to ensure the safety of persons and security of operations. (Id., p. 2; Doc. Nos. 52-

7, 52-8) AR 409 defines force as a directed movement or overt action with or without weapons or devices, with intention of restraining, regaining, maintaining control of the inmate. (Doc. No. 52-6, p. 2; Doc. No. 52-7, p. 1) AD 17-06 establishes that the use of non-deadly force may be used when necessary to restrain, maintain, or regain control of an inmate with a minimum or injury, and must be directly related to the amount of force used by the inmate.( Doc. No. 52-6, p. 3; Doc. No. 52-8, p. 2) When an incident report is prepared following the use of force, the Deputy/Assistant Director will review the report and any recordings and then forward the material to Internal Affairs for review. (Doc. No. 52-6, p. 3) Naylor further stated that he reviewed the staff incident reports and the notes from the unit's medical staff, which indicated that when examined, Plaintiff refused vital signs. (Id., p. 4; Doc. No. 52-10) When Plaintiff was asked by medical if he hit his head, he replied, "no, I bit my lip. See" and he showed the nurse a small abrasion to his bottom inside lip with no bleeding noted. (Id.) Medical also noted that Plaintiff denied any pain and denied needing any attention. (Id.) After reviewing the file of the incident, Naylor's office determined that the level of force used by Defendant Washington was appropriate and necessary to restrain, regain, or maintain control of Plaintiff. (Doc. No. 52-6, p. 4; Doc. No. 58)

Naylor also reviewed Plaintiff's disciplinary hearing documents and noted that Plaintiff's disciplinary hearing was held on September 26, 2019, in accordance with the ADC disciplinary policy, AD 18-34. (Doc. No. 52-6, pp. 4-9; Doc. No. 52-13) According to the Declaration of Keith Waddle, the disciplinary hearing officer who presided over Plaintiff's hearing, Plaintiff pled guilty at the start of the hearing to violating rules 12-3, failure to obey verbal and/or written orders of staff, and 12-4, refusing a direct order to leave or enter any area of the institution or ADC property, including, but not limited to, a cell, barracks, chow hall, transportation vehicle, or hallway. (Doc.. No. 52-12, pp. 1-2; Doc. No. 57-11) Plaintiff was permitted to provide a statement for the record

7

at the hearing, which Waddle considered together with Washington's statement. (Doc. No. 52-12, p. 2) After considering the evidence presented, Waddle found him guilty of violating the first two charges, in addition to violations of Rule 02-21, running, avoiding, or otherwise resisting apprehension; Rule 05-3, assault – any threat to inflict injury upon another, directly or indirectly, verbally, or in writing; and Rule 04-17, throwing or attempting to throw substances known or unknown towards or upon another person. (Id.; Doc. No. 52-11, p. 2) Plaintiff received a punishment of thirty days in punitive isolation, a reduction in his class status, and a sixty-day restriction of his privileges. (Id.)

In his deposition, Plaintiff stated that he was housed in isolation on September 17, 2019, and admitted that he refused to allow an officer to place another inmate in the cell with him because that other inmate did not belong to the same gang as Plaintiff. (Doc. No. 52-1, pp. 13-15) When Washington arrived, he first tried to spray Plaintiff with mace and then escorted Plaintiff down the hall. (Id., p. 16) As they passed the control booth, Washington shoved Plaintiff's head into the booth multiple times until "my head busted and my mouth was bleeding. Then he threw me in the shower and attempted to tase me with the – with the Taser." (Id.) Plaintiff stated that he did not refuse to go to the shower, but that he did want to return to the dayroom. (Id., p. 18) He also denied that he snatched away from Washington and denied that he tried to spit on Washington. (Id.) He said he did not know why Washington slammed him into the control booth, which left him with a knot on his head and a bleeding lip. (Id., pp. 19-20. Although Plaintiff stated that he did not see the nurse until later that night at pill call, he admitted that the nurse's notes reflected that Plaintiff was treated at 6:17 p.m. by the nurse while he sat in the shower. (Id., pp. 21-22) Although the nurse's notes state that Plaintiff refused vitals, he claimed that they never asked to take his vitals, but admitted that the nurse asked about his injuries. (Id., pp. 22-23) Plaintiff complained in his

deposition that Defendants denied him medical care because the incident occurred about 4:00 and although Plaintiff asked for a nurse, she did not come to see him until about 6:17. (Id., pp. 24-25) Plaintiff admitted that the photo did not show the cut on his lip, but claimed that it showed the knot on his head. (Id., pp. 27-28) The notes of the medical encounter stated that "pt refused vitals, pt was asked if he hit his head, pt state 'no, I bit my lip, see.' Pt then showed nurse his small abrasion noted to his bottom inside lip, no bleeding noted, pt denies any pain and denies needing any medical attention." (Id., p. 35)

Based on all the above evidence, Defendants state that Plaintiff cannot prove that Washington touched him maliciously and sadistically to cause him harm, rather than in a good-faith effort to maintain or restore discipline, and cannot show an actual injury or that any delay in treatment caused him injury.

B.    **Plaintiff's Response**

In response, Plaintiff states that summary judgment is inappropriate because the parties dispute the facts which occurred, and that the photo presented supports his claims that his mouth and head were injured. In addition, Plaintiff stated he was not provided the opportunity to review camera footage of the incident.

C.    **Defendants' Reply**

Defendants deny this last statement in their Reply, and state that although Plaintiff did not ask the them to provide camera footage during the course of discovery, they did preserve footage from Plaintiff's cell area on September 17, 2019, between 4:10 p.m. and 4:30 p.m. (Doc. No. 62) This footage depicts officers bringing an inmate to Plaintiff's cell, and after some discussion with the inmate in the cell, the officers removed an inmate from the cell. (Id., p. 2) The video did not depict the alleged use of force by Defendants and is the only video from that date and time. (Doc.

No. 62-1, p. 2) In addition, Warden James Gibson declared that no camera footage of the incident between Plaintiff and Defendants was destroyed. (Id.)

### D.     Analysis

#### 1)     Excessive Force/Failure to Protect

To support an excessive force claim, Plaintiff must allege and prove that force was not applied in a good-faith effort to maintain or restore discipline, but rather, maliciously and sadistically to cause harm. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).   Factors to consider when determining the reasonable use of excessive force include whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by the officers, efforts the officers used to temper the severity of their response, and the extent of the inmate's injury. Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002).   In Wilkins, the United States Supreme Court held that the absence of serious injury is not irrelevant to an excessive force inquiry, but is a factor which could suggest whether the force could "plausibly have been thought necessary" and might also provide an indication of the amount of force applied. 559 U.S. 34, 37 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). While a "limited application of capstun to control a recalcitrant inmates constitutes a 'tempered response by prison officials' when compared to other forms of force, ... not every instance of inmate resistance justifies the use of force." Treats, 308 F.3d at 872 (quoting Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000)).

In Burns v. Eaton, an inmate claimed excessive force after an officer sprayed him with pepper spray and then another officer denied him the opportunity to wash off the spray. 752 F.3d 1136 (8th Cir. 2014). In applying qualified immunity to Plaintiff's claim, the Court stated that "if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff 'must identify affirmative evidence from which a jury could find that the

plaintiff has carried his or her burden of proving the pertinent motive.'" Id. at 1139 (quoting Crawford-El v. Britton, 523 U.S. 574, 600 (1998)). The Court also held that the inmate failed to establish "malicious or sadistic" conduct, or evidence of "a malicious motive to harm, or evidence that the force used was so greatly in excess of that needed to restore and maintain order as to raise a reasonable inference of malicious motive." Id. at 1140.

Although there is a dispute of fact between Plaintiff's version of the incident and the three officers' versions, Plaintiff provides no evidence in support of his claim. Yet, Defendants provide Declarations, incident reports, an Internal Affairs report, and disciplinary proceeding reports that all support their accounts. The video of the incident, however, is not helpful. (Doc. No. 66) It shows an officer escorting an inmate down the hall, and when they arrive at a cell, three other officers are standing in the doorway of an open cell. One officer enters the cell, and eventually an inmate is escorted out of that cell (presumably Plaintiff), and the inmate in the hall is placed in the cell. Two officers then escort Plaintiff down the hall. No other activity can be seen. The photograph of Plaintiff also is not helpful, as neither a knot on his head nor a cut on his lip are visible. (Doc. No. 52-1, p. 36) The medical record, however, does verify that any injuries Plaintiff received were minimal. (Id., p. 35)

"'When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 383 (2007) (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)).

Based on the Defendants' evidence, therefore, the Court finds that Defendants acted reasonably under the circumstances. Plaintiff did not deny that he refused a direct order to allow

an inmate into his cell, and he admitted that he wanted to be taken to the dayroom. He also pled guilty to two disciplinary charges involving refusal of orders. In addition, Plaintiff provided no evidence of significant injury which would verify an unreasonable use of force. Therefore, the Court finds as a matter of law that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, establish excessive force by Washington. And without evidence of excessive force, Plaintiff cannot prove that Defendants Jones and Brown failed to protect him.

### 2)    Denial of medical care

To support an Eighth Amendment claim, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need.  Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).  See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim.  Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds).  Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment."  Dulany,

supra, 132 F.3d at 1240.

Plaintiff claimed Defendants denied him medical care, but the Declarations, incident reports, and medical services encounter show otherwise. Plaintiff even admitted in his deposition that the nurse visited him while he was in the shower. Although the nurse did not examine him until almost two hours after the incident occurred, Plaintiff provides no evidence that the Defendants were responsible for the delay, or that he suffered a detrimental effect from the delay. Again, the medical record documented that Plaintiff refused vitals, denied he hit his head, and denied any pain or that he needed medical attention. (Doc. No. 52-1, p. 35) Therefore, no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a denial of medical care by Defendants

### 3)   State law claims

In light of the dismissal of Plaintiff's constitutional claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. McLaurin v. Prater, 30 F.3d 982, 984-94 (8th Cir. 1994).

## IV.   Conclusion

IT IS, THEREFORE, ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 52) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 26th day of April, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE